

```
                    UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
                          EASTERN DIVISION


MARCO SANTIAGO ZABALA,          )   Case No. EDCV 08-0647-MLG
                                )
         Petitioner,            )   MEMORANDUM OF OPINION AND ORDER
                                )
    v.                          )
                                )
ROBERT HOREL, Warden,           )
                                )
         Respondent.            )
                                )
_____)
```

## I.   Facts and Procedural History

This is a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. The underlying facts are uncontested and are taken verbatim from the unpublished decision of the California Court of Appeal affirming Petitioner's convictions.[1] *People v. Hernandez, et al.*, 2006 WL 3501293, *1-3 (Cal. Ct. App. 2006). (Lodgment 6).

    On December 18, 2001, Guillermo Solis ("Solis") went to an
    AM/PM market at an Arco gas station to buy snacks for his
    pregnant wife. He parked his car, a black Mitsubishi, and

---

[1] For clarity, Zabala is referred to as "Petitioner."

used the nearby pay phone to call his wife to find out specifically what snacks she wanted. Solis saw three men standing near the pay phones: Juan Rizo ("Rizo"), Armando Villa Hernandez ("Hernandez") and a third unidentified man. As Solis spoke to his wife, Hernandez walked up to him and asked him for quarters. Solis said that he did not have any. Marco Santiago Zabala ("Petitioner") then walked up to Hernandez and told him to hurry up and start their car. Hernandez went to a blue Subaru parked near the gas pumps. Petitioner then approached Solis and demanded Solis's wallet. When Solis backed away, Petitioner grabbed him by the sweatshirt and pulled Solis toward him. He pointed what Solis believed to be a gun at Solis's stomach. He instructed Solis to give him his wallet if he did not want to die.

When Solis failed to hand over his wallet, Petitioner searched his pockets, pulling his wallet from his back pocket and his car keys from his front pocket. He asked Solis if the Mitsubishi was his. Solis said it was. Petitioner got into Solis's car and drove away. Petitioner and Hernandez, who was driving the blue Subaru, exited the gas station at the same time.

Rizo had been standing near the phones during the robbery. He did not participate in the encounter between Solis, Petitioner and Hernandez. After Petitioner and Hernandez drove off, Solis approached Rizo and asked him what was going on. Rizo said he had also been a victim and that the two men had him in their car. Solis then went

inside the store and called the police, who arrived within a few minutes.

In response to the dispatch about the car jacking, a sheriff's deputy drove toward the AM/PM. When he was less than a mile from the market, he saw a black Mitsubishi and a blue Subaru. He followed the cars until both pulled into the driveway of a house about three miles from the market. Hernandez, who was driving the blue Subaru, ran into the backyard. Petitioner got out of the Mitsubishi and walked toward the front door of the house. Petitioner was detained and placed into a patrol car after other deputies arrived. Hernandez was found hiding in a dog house in the backyard. A deputy found car keys in the dog house and two chains on the fence nearby. A boot and a belt were found in the trunk of the Subaru.

Deputy Clear was dispatched from the house to the AM/PM to speak to Rizo and bring him back to the house in order to identify the defendants. Rizo spoke little English and Deputy Clear was a certified bilingual officer. When Deputy Clear arrived at the AM/PM, he observed that Rizo appeared upset and shocked. He then told Deputy Clear that the men had taken him in their car, took his jewelry and boots, and instructed him to get money from his family or they would kill him.

Deputy Clear then took Rizo to the house where defendants were being detained. He gave Rizo the standard field identification admonition. Rizo immediately identified Petitioner and Hernandez as the men who he

stated had kidnaped and robbed him. As Petitioner was removed from the patrol car for the field identification procedure, Solis's car keys fell out of his pocket. Deputies also found a gold-colored ring with a blue stone on Petitioner. A wallet that was found in the console of the Subaru was released to Solis, and a boot, a belt and a ring were released to Rizo.

Petitioner and his co-defendant Hernandez were charged in a five count information with: (1) kidnaping Rizo for the purpose of robbery or sexual assault (Cal. Penal Code § 209(b)(1)); (2) robbery of Rizo (Cal. Penal Code § 211); (3) dissuading a witness (Rizo) (Cal. Penal Code § 136.1(c)(1)); (4) car jacking as to Solis (Cal. Penal Code § 215(a)), and (5) robbery of Solis (Cal. Penal Code § 211). The information alleged that all five counts were committed by both defendants for the benefit of or in association with a criminal street gang. (Cal. Penal Code § 186.22(b)(1)). As to counts 4 and 5, the information alleged that Petitioner personally used a firearm (Cal. Penal Code §§ 12022.53(b), 1192.7(c)).

On April 19, 2005, Petitioner was convicted of count 2, the robbery of Rizo, and counts 4 and 5, the car jacking and robbery of Solis. (Clerk's Transcript ("CT") at 80-82.) The trial court granted a defense motion for acquittal on count 3, the charge of dissuading a witness. The jury acquitted both defendants on count 1, the kidnaping for robbery of Rizo, and deadlocked on the lesser included offense of simple kidnaping. (CT at 83.)[2] The gang allegations were

---

[2] The evidence at trial revealed that Rizo worked as a carpet installer for Hernandez's uncle and that Rizo and Hernandez had worked on several jobs together. (Reporter's Transcript ("RT") at 361-62.)

found true as to both defendants on count 5, and true as to Petitioner on count 4. The jury deadlocked on the gang enhancement allegation in count 2. It found all of the firearm use allegations untrue. The trial court declared a mistrial as to count 1 and as to the gang enhancement on count 2. On November 18, 2005, Petitioner was sentenced to a prison term of 15 years to life, plus 28 years. (CT at 113.)[3]

Petitioner appealed the judgment to the California Court of Appeal. (CT at 112.) Petitioner claimed, inter alia, that the trial court violated his Sixth Amendment right to confrontation by allowing into evidence the out-of-court statements made by Juan Rizo to both Solis and Deputy Clear.[4] *See Crawford v. Washington*, 541 U.S. 36 (2004).

On December 6, 2006, the California Court of Appeal affirmed Petitioner's convictions. The court of appeal concluded that (1) Rizo's statements to Solis were not testimonial and were admissible under the hearsay exceptions for spontaneous declarations and, (2) the statements Rizo made to Deputy Clear were testimonial, and their admission violated the Confrontation Clause, but that the statements to Deputy Clear were cumulative of other evidence, and therefore their admission was harmless error. (Lodgment 6.)

---

[3] Count 5, the Solis robbery, was deemed the principal count, for which Petitioner received the mid-term of three years. A ten year consecutive sentence was imposed on the gang enhancement relating to count 5. On Count 4, the Solis car jacking, Petitioner was sentenced to life in prison, with the possibility of parole, plus a fifteen year sentence on the related gang enhancement consecutive to count 4. On count 2, the Rizo robbery, Petitioner was sentenced to a three-year concurrent term.

[4] As will be seen, Rizo could not be found and did not testify at either the preliminary hearing or trial.

On January 16, 2007, Petitioner filed a petition for review in the California Supreme Court. (Lodgment 7.) The petition for review was denied without a reasoned decision on February 21, 2007. (Lodgment 8.)

On May 13, 2008, Petitioner filed this petition. Petitioner generally asserts that the admission of the testimonial hearsay statements of Juan Rizo violated Petitioner's confrontation rights under the United States Constitution and that the state courts' finding that the error was harmless was an unreasonable application of federal law. However, the real issue in the case involves a challenge to the harmless error finding as to Clear's testimony.[5] Respondent has filed an Answer and Petitioner has filed a Reply. The matter is ready for decision.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was decided on the merits in state court only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The only source for clearly established federal law

---

[5] The petition alleges that the introduction of Rizo's statements to both Solis and Clear violated the Confrontation Clause. The memorandum in support of the petition only challenges the harmless error finding as to Clear's testimony. To the extent that the petition challenges the state court's finding that Rizo's statements to Solis were spontaneous declarations and therefore non-testimonial, it is beyond question that the California Court of Appeal's finding was not an unreasonable application of *Crawford*. *See Davis v. Washington*, 547 U.S. 813, 826-28 (2006); *Delgadillo v. Woodford*, 527 F.3d 919, 926-27 (9th Cir. 2008).

is the holdings of the Supreme Court, as opposed to the dicta, at the time of the state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2007).

A state court decision is "contrary to" clearly established federal law if the state court "applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state court need not cite or even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)).

A state court decision involves an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case. *Brown*, 544 U.S. at 141; *Williams v. Taylor*, 529 U.S. 362, 407-08, 413 (2000). When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue. *Musladin*, 549 U.S. at 77. "Circuit precedent is relevant under AEDPA when it illuminates whether a state court unreasonably applied a general legal standard announced by the Supreme Court." *Richter v. Hickman*, No. 06-15614, 2009 WL 2425390, at *5 (9th Cir. Aug. 10, 2009)(en banc).

It is not enough that a federal court conclude "in its independent judgment" that the state court decision is incorrect or erroneous. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (quoting

*Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam)). "The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). AEDPA imposes a "'highly deferential standard for evaluating state-court rulings' which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quoting *Woodford*, 537 U.S. at 24), *Vasquez v. Kirkland*, 572 F.3d 1029, 1035 (9th Cir. 2009).

The claims raised in the Petition were raised before the California Supreme Court, but that court did not issue a reasoned decision. (Lodgment 11). In this circumstance, the Court must "look through" the unexplained California Supreme Court decision to the last reasoned decision, as the basis for the state supreme court judgment. *See Mendez v. Knowles*, 556 F.3d 757, 767 (9th Cir. 2009)(citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

### III. Discussion and Analysis

Because the California Court of Appeal found that the admission of Rizo's statements to Deputy Clear was error under *Crawford*, the sole issue before the Court is whether the court of appeal's harmless error finding was contrary to or an unreasonable application of clearly established federal law. In conducting this analysis, it is important to note that the claim for relief applies only to Count 2, the Rizo robbery conviction, for which Petitioner received a three-year concurrent sentence. The claim for relief does not impact the

1  car jacking and robbery convictions involving Solis.[4]

2  The California Court of Appeal correctly found that Petitioner's Sixth Amendment confrontation rights had been violated by the admission of Rizo's out-of-court statements to Deputy Clear. *Crawford v. Washington*, 541 U.S. at 53-54 (2004). In applying the *Crawford* test, the court determined that Rizo's statements to Deputy Clear were testimonial. Additionally, the court of appeal observed that because Rizo did not testify at the preliminary hearing or at trial, Petitioner had no opportunity to cross-examine Rizo. However, as noted, the court found the error to be harmless.

In *Chapman v. California*, 386 U.S. 18, 24 (1967), the Supreme Court held that where there is a constitutional violation, an appellate court must reverse the conviction unless it determines the error was "harmless beyond a reasonable doubt." The California Court of Appeal, while not directly citing *Chapman*, applied the *Chapman* test and concluded that the erroneous admission of Deputy Clear's hearsay testimony "may be deemed harmless beyond a reasonable doubt if the evidence is cumulative of other evidence," citing *People v. Ledesma*, 39 Cal.4th 641, 708 (2006).[5] The court of appeal went on to

---

[4] While review of this conviction might seem to warrant application of the discretionary concurrent sentence doctrine, *see Benton v. Maryland*, 395 U.S. 784, 790-91 (1969); *Cheeks v. Gaetz*, 571 F.3d 680, 689-91 (7th Cir. 2009); *Van Gelden v. Field*, 498 F.2d 400, 403 (9th Cir. 1974)(holding federal courts may decline to review a conviction carrying a concurrent sentence when one concurrent sentence is found valid), the argument has not been raised by Respondent and the Court will assume that the conviction on count 2 carries collateral parole or "three-strikes" consequences.

[5] In *Ledesma*, the California Supreme Court found that the admission of a police officer's testimony about a statement made by a robbery victim was harmless error, where the victim also told another witness about the robbery and numerous other witnesses testified that the defendant admitted committing the robbery. 39 Cal.4th at 709.

note that Clear's testimony as to what Rizo told him was cumulative of Solis's testimony regarding Rizo's statements to Solis. The court of appeal also found that there was "substantial inculpatory evidence independent of Deputy Clear's testimony, namely that a boot found in the trunk of the car Hernandez was driving immediately before he was apprehended was released to Rizo," as were "other items." (Lodgment 6).

Because the court of appeal applied the equivalent of the *Chapman* test, its decision was not contrary to clearly established Supreme Court precedent. Accordingly, "habeas relief is appropriate only if the [state court] applied harmless-error review in an 'objectively unreasonable' manner." *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) (per curiam); *see also Fry v. Pliler*, 551 U.S. 112, 119 (2007) (under *Esparza*, a federal court cannot award habeas relief under Section 2254 "unless the *harmlessness determination itself* was unreasonable.") (emphasis in original.)

Violations of the Confrontation Clause are subject to harmless error analysis because the effect can be "quantitatively assessed in the context of other evidence presented to the jury." *Winzer v. Hall*, 494 F.3d 1192, 1201 (9th Cir. 2007)(internal citations omitted)(quoting *Arizona v. Fulminante*, 499 U.S. 279, 308 (1991)). The Supreme Court has held that whether a Confrontation Clause error is harmless "depends upon a host of factors" which "include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's

case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). In finding the error in this case harmless, the California Court of Appeal focused primarily on whether Deputy Clear's testimony was cumulative of Solis's testimony. The Court also noted other corroborative evidence such as the discovery of the single boot and other items in the possession of Petitioner and Hernandez.[6]

But, even if it was found that the state courts applied *Chapman* in an objectively unreasonable manner, a petitioner must still show he suffered prejudice from the constitutional error under the standards established in *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *see also Fry*, 551 U.S. at 119-20; *Inthavong v. Lamarque*, 420 F.3d 1055, 1059 (9th Cir. 2005). Under *Brecht*, the Court must find that the error "had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637, *Slovik v. Yates*, 556 F.3d 747, 755 (9th Cir. 2009). However, "[s]ince both the *Brecht* and the AEDPA/*Esparza* tests must be satisfied with respect to harmless error before relief can be granted, [this Court is] not obligated to address them in any particular order." *Inthavong*, 420 F.3d at 1061; *see also Fry*, 551 U.S. at 120 ("[I]t certainly makes no sense to require formal application of both tests (AEDPA/*Chapman* and *Brecht* ) when the latter obviously subsumes the former.").

"In making this inquiry, the court must review the record to determine 'what effect the error had or reasonably may be taken to have had upon the jury's decision.'" *McKinney v. Rees*, 993 F.2d 1378,

---

[6] The court of appeal did not address any of the other *Van Arsdall* factors. However, there is no authority which indicates that a state court must consider all of the *Van Arsdall* factors in order for its harmless error analysis to be deemed a reasonable application of Supreme Court precedent.

1385-86 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)). In *Brecht*, the Supreme Court examined various factors, including (1) whether the State's references to the constitutional error were infrequent, (2) whether the evidence was merely cumulative of other admissible evidence and (3) whether other evidence of guilt, "if not overwhelming," was "weighty." 507 U.S. at 639. An error may be deemed harmless if the reviewing court finds that "the error did not influence the jury, or had but very slight effect" and that "the judgment was not substantially swayed by the error." *Kotteakos*, 328 U.S. at 764-765. The *Brecht* factors overlap to a great extent with the *Van Arsdall* factors described earlier, and accordingly, I will integrate the two standards to determine whether this Confrontation Clause error was harmless.

It is clear that Rizo's statements to both Solis and Clear that he had been robbed were important to the prosecution's case. Indeed, those statements were the only direct evidence which supported the Rizo robbery conviction, as there were no other eye witnesses.

However, the court of appeal correctly found that Clear's inadmissible testimony was, for the most part, cumulative of Solis's. In a nutshell, Solis testified that Rizo told him that he (Rizo) was also a victim of Petitioner and Hernandez, that they took him to a dark place, threatened to kill him if he did not get his family to bring them money, and that they had taken his boots and a chain. (RT at 30-31.) Solis testified he first saw Rizo at the pay phone with Hernandez and another man and later observed that Rizo was wearing socks but no shoes. (*Id.*)

Deputy Clear testified that when he arrived on the scene, Rizo appeared frightened and upset. (RT at 88.) Rizo told him that he was

forced into a car, was driven a long ways away, and that he had his jewelry and some articles of clothing, including his boots, taken from him. (RT at 89.) Deputy Clear also testified that Rizo told him that the assailants wanted money and threatened to kill him if he did not get money from his family. (RT at 89.) In addition, Deputy Clear testified that he then took Rizo in his patrol car to the house where the defendants had been detained where Rizo positively identified both Petitioner and Hernandez as the men who had robbed him. (RT at 91.) Finally, Deputy Clear testified that he then drove Rizo to the Moreno Valley police station where he released certain property to Rizo, including a gold ring with a blue stone that Rizo stated "had been stolen from him." (RT at 91-92.) Deputy Clear testified that he found the gold ring on Petitioner. (RT at 92.)

Clear's testimony was essentially cumulative of Solis's. The statements Rizo made to Solis and Clear concerning the fact of the robbery and what was taken are virtually identical. While Clear's testimony includes Rizo's identification of Petitioner and Hernandez during the field identification, this too is cumulative of Solis's testimony and the other evidence in the case. Solis testified that Rizo told him that the two men who had taken Solis's car had also robbed him. Solis identified Petitioner and Hernandez as the men who stole his car. Petitioner and Hernandez were observed in possession of Solis's car and were arrested within minutes of the car jacking. Hernandez was found hiding in a dog house and gold chains were found hanging on a nearby fence. (RT at 125-26.) Petitioner had the keys to the stolen car on his person. (RT at 142.) Clear's testimony concerning Rizo's field identification was therefore cumulative of the statements Rizo made to Solis at the gas station as to the identity

of the robbers. The identification was also supported by the other evidence in the case.

The only non-cumulative statement involves the identification of the gold ring by Rizo. Clear's testimony that Rizo told him that the gold ring found on Petitioner had been stolen from him is not cumulative of Solis's testimony. However, in light of the other cumulative evidence, it cannot be said that the testimony about Rizo's identification of the ring substantially influenced the jury's verdict. A search of the trunk of the blue Subaru used by the robbers revealed a boot and a snake skin belt. Rizo told Solis the robbers had taken his boots. Solis's wallet was found in the console. (RT at 178-79, 185.) The admission of the non-cumulative testimony concerning the identification of the ring cannot be said to have resulted in a substantial and injurious effect on the jury's verdict.

In cases in which evidence has been improperly admitted, as here, the court may also look at the extent to which the prosecutor emphasized the improper evidence in determining whether the error was harmless. *See, e.g., Ghent v. Woodford*, 279 F.3d 1121, 1131 (9th Cir. 2002) (prosecutor "relied heavily on [improperly admitted testimony] . . . during both opening and closing arguments," thereby "demonstrat[ing] just how critical the State believed the erroneously admitted evidence to be"). Here, the references by the prosecution to the improperly admitted testimony were not frequent. There is no mention of Rizo's statements to Clear in the initial portion of the closing argument of the prosecutor. (RT at 452-484.) In his rebuttal, the prosecution simply noted the consistency between the statements made by Rizo to Solis and those made to Deputy Clear to show that Rizo's statement was not fabricated. (RT at 540-541.) Thus, the

reference to the inadmissable evidence was neither frequent nor significantly relied upon.

Finally, the other evidence demonstrating that Petitioner robbed Rizo, while not overwhelming, was sufficiently weighty to demonstrate that Deputy Clear's testimony did not have a substantial and injurious effect on the jury's verdict. The evidence offered against Petitioner on Count 2 included: (1) Solis's testimony that Rizo told him that he had been robbed of his boots and chains by Petitioner and Hernandez; (2) Solis's observation that Rizo was with Petitioner and Hernandez when he first observed him, and that Petitioner and Hernandez left Rizo behind without any shoes after taking Solis's car; (3) the contemporaneous robbery of Solis by Petitioner and Hernandez; and (4) possession by Petitioner and Hernandez of Solis's wallet, as well as a boot and two chains, the items that Rizo told Solis had been stolen.

Applying the *Brecht* standard in light of the other admissible testimony and the corroborating evidence, it cannot be said that the improper admission of the Rizo's statements to Deputy Clear had "a substantial and injurious effect or influence" in determining the jury's verdict on the Rizo robbery charge. Accordingly, habeas corpus relief is not warranted.

//
//
//
//
//
//
//

## IV. Conclusion

For the reasons stated above, the Petition for Writ of Habeas Corpus is **DENIED**.

Dated: September 9, 2009

_____
Marc L. Goldman
United States Magistrate Judge